Valentine JURADO, a.k.a. Val
Valentine, Plaintiff,

v.

ELEVEN–FIFTY CORPORATION, a Del-
aware corporation, d.b.a. Radio Station
KIIS–FM Los Angeles; Pacific and
Southern Company, Inc., a Delaware
corporation: Combined Communica-
tions Corporation, an Arizona corpora-
tion; Gannett Company, Inc., a Del-
aware corporation, Defendants.

No. CV 82–4359.

United States District Court,
C.D. California.

Dec. 30, 1985.

William A. Snyder of Snyder & Rios,
Newport Beach, Cal., for plaintiff.

Robert L. Murphy and Diane J. Gideon of
Manatt, Phelps, Rothenberg, and Tunney,
Los Angeles, Cal., for defendants.

MEMORANDUM OPINION AND ORDER
THEREON GRANTING DEFEND-
ANTS' MOTION FOR SUMMARY
JUDGMENT

REA, District Judge.

This matter is before the Court on de-
fendants' Motion for Summary Judgment,

filed May 20, 1985, and heard by the Court on July 29, 1985. The Court has considered the Motion, the briefs in support of the Motion, the briefs filed in opposition to the Motion, the affidavits, declarations, transcripts, and exhibits in support of and in opposition to the Motion, the entire record of the case, the oral arguments of counsel, and their supplemental briefing.

IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment is GRANTED in full for all reasons set forth therein as well as the following memorandum opinion.

## OVERVIEW

The history of this case is rather tortured and convoluted. For this reason, an extensive background of the earlier activity in this case is necessary to an understanding of the Court's grant of summary judgment. Specifically, an extended background is necessary to clarify for the record exactly which claims are still before the Court, and which are not. Plaintiff, particularly, demonstrates a profound confusion on this point. Prior to the instant motion for summary judgment, this case has earlier been the subject of three motions to dismiss and an earlier motion for summary judgment. As a result of these motions, the plaintiff's lawsuit now consists of four counts drawn from the original nine of the first amended complaint, and the Title VII claims of the Revised Supplemental Complaint. Despite the Court's labors to narrow the issues, plaintiff's memorandum of contentions of fact and law, prepared for the pretrial conference in this case, ironically, sets forth fifty five contentions of fact and one hundred and seventy eight contentions of law. Before the Court can proceed to rule on the issues raised by the instant motion, the Court must make clear what remains in this case.

## BACKGROUND

The original complaint in this action was filed on August 24, 1982. It contained nine counts, as follows:

1. a claim based upon the Labor Management Relations Act for failure to adhere to a collective bargaining agreement;

2. a claim based upon 42 U.S.C. §§ 1981 & 1982, and the Thirteenth Amendment to the U.S. Constitution;

3. a claim based upon the state law cause of action for breach of the Implied Covenant of Good Faith and Fair Dealing in Employment;

4. a claim based upon the state law tort of Wrongful Discharge;

5. a claim based upon the state law tort of Intentional Interference with Contractual Relations;

6. a claim based upon 42 U.S.C. § 1985(3), and the First, Thirteenth, and Fourteenth Amendments to the U.S. Constitution;

7. a claim based upon 42 U.S.C. § 1986;

8. a claim based upon the state Unruh Act, 51 Cal.Gov. and Comm.Code §§ 12940(a) and 12948 [Cal.Civ.Code § 51, Cal.Gov.Code §§ 12940(a) and 12948];

9. a claim based upon the state law tort of Intentional Infliction of Emotional Distress.

The factual allegations of the original complaint, and as developed in later filings, are straightforward. In a nutshell, they told the following story. Plaintiff Valentine Jurado (whose performing name is Val Valentine and who will hereafter be referred to as Jurado), was a staff announcer, or "disc jockey" on a radio station owned by defendant Eleven-Fifty Corporation, d.b.a. Radio Station KIIS–FM (hereafter KIIS). The other defendants are Pacific and Southern Co., Inc., which allegedly owns all of the KIIS–FM stock, Combined Communications Inc., of which Pacific and Southern is a subsidiary, and Gannett, which owns a controlling share of Combined Communications stock. Jurado had initially used only English in his broadcasts, but later joined in an agreement with KIIS to also use some Spanish words and phrases as a part of his English language radio program. KIIS–FM was told by a

consultant that this approach was bad for their ratings, caused listener confusion as to the nature of the channel, and should be dropped. Don Benson, KIIS's program director later came to the same conclusion, and told Jurado to cease speaking Spanish on the air.[1] At the same time, Jurado's program hours were slightly altered. Jurado refused to stop speaking Spanish.[2] Plaintiff was thereafter terminated.

Before the filing of the original complaint on Aug. 24, 1982, Jurado had initiated a grievance procedure through his union, AFTRA, which had a collective bargaining agreement with KIIS.[3] On November 12, 1981, AFTRA filed a request for arbitration under this collective bargaining agreement. Although it appears that KIIS was initially unwilling to arbitrate, they later agreed to do so and the arbitration was set for Nov. 12, 1982. The issues to be decided at this arbitration were two:

> 1. Did the respondents violate their collective bargaining agreement with Los Angeles Local of (AFTRA) by the failure to pay Val Valentine sums due him and by discharging Val Valentine?
>
> 2. If so, what are the appropriate remedies?

While the arbitration was being set, the defendants filed a Motion to Dismiss or Stay Judicial Proceedings Pending Arbitration in this Court, heard on Nov. 8, 1982.

As a result of this motion, the Court ordered, on Nov. 10, 1982, that the District Court action be stayed pending the disposition of the arbitration. The Court took the motion to dismiss under submission. Arbitration began on Nov. 12, 1982, and was continued to Nov. 22, 1982. The parties resolved the arbitration before decision by the arbitration panel. They settled a dispute concerning translation fees, and entered a stipulation (also referred to as the "the settlement"), dated Nov. 22, 1982. Only the stipulation is of concern to the Court. The stipulation provided, inter alia, that AFTRA would withdraw its request for arbitration; that Jurado would not assert a claim for breach of the duty of fair representation against AFTRA; and that defendants would not raise as a defense to Jurado's District Court lawsuit Jurado's failure to exhaust his contractual remedy of arbitration concerning any claims arising from retaliation.[4]

Having resolved the arbitration, the parties stipulated to lift the stay imposed by the Court on Nov. 10, 1982. On Jan. 3, 1983, the Court heard argument on the submitted motion to dismiss. The Court ordered the original complaint dismissed with leave to amend. *See* Order Granting Defendants' Motion to Dismiss (filed Jan. 11, 1983). As set forth therein, the Court found that Count 1, based upon the Labor Management Relations Act, had to be dis-

1. A substantially undisputed, detailed account of the chain of events leading to Jurado's leaving KIIS is set forth in pages 5–18 of Defendants' Memorandum of Contentions of Fact and Law (filed Jan. 10, 1985). Don Benson actually told Jurado to stop using Spanish on the air. Benson came to the decision to make this change based upon his independent analysis of the KIIS market, and KIIS ratings. He had available to him the earlier analysis prepared by the consultant, L. David Moorhead.

2. Paragraphs 49 & 50 of the original complaint state:

> ¶ 49 Plaintiff Val Jurado was informed of a change in his hours of employment and instructed to cease entirely his use of the spanish (sic) language while broadcasting his character "Val Valentine" at Radio Station KIIS–FM, Los Angeles, or be terminated from his employment.

> ¶ 50 Plaintiff refused to cease his use of the spanish (sic) language in broadcasting his character "Val Valentine" and asserts that he was entitled to retain said character's use of the spanish (sic) language under the terms of his oral agreement with defendant Eleven-Fifty, and under the terms of the Collective Bargaining Agreement....

3. An accurate procedural history is found at pages 8–18 of Defendants' Motion for Summary Judgment (filed Oct. 10, 1984).

4. The stipulation states, "Without conceding that the Retaliation Claims are included within the scope to the aforementioned Federal District Court Action, Company agrees that it will not raise, as a defense to the Retaliation Claims, the Grievants's failure to exhaust his contractual remedies." *See* First Amended Complaint, Exhibit B, ¶ 3.

missed for Jurado's failure to exhaust his contractual remedies under arbitration. The Court found that Jurado fell outside any exception to this rule. The Court recognized that parties to a contract dispute may mutually agree to waive arbitration, thereby forcing the dispute into the judicial arena. *See United Steelworkers of America v. Mesker Bros. Indus., Inc.*, 457 F.2d 91 (8th Cir.1972). Nevertheless, the Court found that no waiver had been alleged. The Court specifically noted that language in the Nov. 22 stipulation, quoted at footnote 4, was not a waiver of arbitration. That language limited itself to waiving arbitration insofar as Jurado claimed that he was discharged in retaliation for participating in collective bargaining negotiations. Such a claim was not the basis for Count 1, and the Court ordered it dismissed.

 The Court found that Count 2 also had to be dismissed. Count 2 set forth a claim based upon violations of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982. Section 1981 provides a cause of action for employment discrimination on the basis of race. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Plaintiff's allegations were not based upon race. Rather he alleged that he was discharged for willfully refusing to abide by his employer's instructions to cease broadcasting in the Spanish language. *See* original complaint ¶¶ 49–51. A voluntary refusal to abide by such an instruction does not suffice to establish a claim under § 1981. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980, *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Section 1982 protects the rights of all citizens to "inherit, purchase, lease, sell, hold, or convey real and personal property." Its provisions plainly did not extend to Jurado's claims, which sounded in employment discrimination, or possibly in breach of contract.

Count 6 alleged violation of civil rights under 42 U.S.C. § 1985(3), which proscribes conspiracies to discriminate against citizens on the basis of race. The Court found that Count 6 failed to allege the necessary ele-

ment of a racially based animus as the motivation for the conspiracy, especially since the reason for Jurado's termination was his voluntary refusal to abide by a programming directive, and ordered dismissal. Count 7 alleged a negligent failure to prevent the conspiracy alleged in Count 6 under 42 U.S.C. § 1986. Because Count 6 failed to allege facts sufficient to state a cause of action, Count 7 also had to be dismissed.

The remaining counts of the Complaint were based upon state law. As the Court had already found that there was no diversity of citizenship, these could only be brought in this Court upon the doctrine of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As the Court had dismissed all the federal claims, it was obliged to dismiss these remaining claims for lack of jurisdiction.

Jurado was allowed leave to amend, which was done with alacrity, the First Amended Complaint being filed on January 24, 1983. Defendants filed a Motion to Dismiss the First Amended Complaint on Feb. 14, 1983. That motion was denied, although as a result of it the Court dismissed some counts on its own motion and went to pains to limit the issues implicated by the remaining counts. *See* Order Denying Defendants' Motion to Dismiss (filed Mar. 18, 1983).

The Court's examination of the First Amended Complaint tracked the examination of the Original Complaint. The First Amended Complaint was essentially identical to the Original Complaint, with a few important changes which will be described as necessary. Count 1 was essentially the same as its predecessor, alleging violation of the Labor Management Relations Act by defendants breach of the collective bargaining agreement. Jurado added an allegation that the parties had waived arbitration concerning retaliation claims. The Court felt that this new allegation was sufficient to fall within the exception to the exhaustion of contractual remedies requirement which had led to the earlier dismissal of this

count. The Court went on to note that "The remaining claims contained in Count 1, such as those based on allegations of racial discrimination, are barred by plaintiffs failure to exhaust contractual remedies. The Complaint does not allege facts sufficient to establish repudiation or waiver of the arbitration process by the employer for claims other than the Retaliation Claims."

Count 2 once again alleged causes of action based upon 42 U.S.C. §§ 1981, 1982. The Court found that the § 1982 claim did not state a cause of action, for the same reasons that it was earlier dismissed. The Court found that the § 1981 claim did state a cause of action for discrimination. Jurado had radically changed the factual allegations as to why he was terminated. In the original complaint, Jurado stated that he was terminated for his refusal to comply with the management directive to stop speaking Spanish. In the First Amended complaint Jurado alleges that he was terminated before he had an opportunity to comply with the directive. These allegations went beyond Jurado's original claim that he was discharged for willfully refusing to abide by his employer's instructions, opening the door for the further allegation that he was terminated because of racial animus. These new allegations met the minimal requirements for surviving a Rule 12(b)(6) challenge.

As for Counts 3, 4, 5, & 9, these were the same as those in the original complaint, alleging breach of the implied covenant of good faith and fair dealing; wrongful discharge; intentional interference with contractual relations; and intentional infliction of emotional distress. As defendant Eleven-Fifty Corp. has its principal place of business in California, the Court ruled that it did not have subject matter jurisdiction over these claims under diversity of citizenship, 28 U.S.C. § 1332(a). The First Amended Complaint did state federal causes of action, so the Court had the discretionary power to assert pendent jurisdiction over these state law claims if the Court could find the necessary "common nucleus of operative fact" between them

and the federal claims. The Court found that the state law claims were based upon plaintiff's allegation of an oral contract relating to the development and use of the "Val Valentine" character. See First Amended Complaint, ¶ ¶ 30–32, 34–37. The federal claims, by contrast, were not based upon these allegations. Because these state law claims raised issues of fact and law significantly different from those raised by the federal claims, the Court declined to assert pendent jurisdiction over them. See Order Denying Defendants' Motion to Dismiss, ¶ 7 (filed March 18, 1983), and cases cited therein.

Counts 6 & 7 alleged the same civil rights law as in the Original Complaint. Count 6 alleged violation of 42 U.S.C. § 1985(3), proscribing conspiracies to discriminate against citizens on the basis of race. Count 7 alleged violation of 42 U.S.C. § 1986, which proscribes, *inter alia,* the negligent failure to stop a § 1985(3) conspiracy. The Court had dismissed these counts from the original complaint for failure to allege the necessary element of a class based animus in Count 6. Since Count 7 was derivative of Count 6, they both failed to state a cause of action. The First Amended Complaint did allege the necessary race based animus in Count 6, so the Court found that Counts 6 & 7 did state causes of action.

The only remaining count was Count 8. The Court found that it alleged causes of action arising under the California civil rights statutes. As these claims arose from a "common nucleus of operative fact" shared with the federal causes of action the Court found pendent jurisdiction appropriate. Moving to the merits, the Court found that Count 8 alleged claims under Cal.Gov't Code § 12940(a), Cal.Civ.Code § 51 *et seq.,* and Cal.Gov't Code § 12948. The Court found that only the § 12940(a) allegations properly stated a claim. The other statutes were inapplicable to Jurado's situation under *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970).

In sum, the complaint, as of the March 18, 1983, order was held to state, limited, causes of action under counts 1, 2, 6, 7, and 8. In March 1984 Jurado moved the Court for leave to serve a supplemental complaint under FRCP Rule 15(d), alleging employment discrimination claims under Title VII, and a cause of action under the Communications Act, 47 U.S.C. §§ 151 et seq. Defendants opposed this motion and the Court held a hearing on March 21, 1984. At the hearing, the Court noted its belief that the Communications Act claim was meritless, there is no private right of action under this act. The Court also noted that the Title VII claim would likely be dismissed upon a proper motion. The Court granted the motion for leave to file the supplemental complaint only for the Title VII claim. In due course Jurado filed his Revised Supplemental Complaint on April 4, 1984.

Defendants promptly moved to dismiss the Revised Supplemental Complaint. Their argument was simple, a Title VII action must be brought within 90 days of the EEOC's issuance of a "right to sue" letter. See 42 U.S.C. § 2000e-5(f)(1). Jurado was issued a right to sue letter on May 12, 1982, yet waited nearly two years to file his Title VII action. Jurado responded by arguing that this May 12, 1982, letter had never been received. Jurado argued that the only letter received was a second right to sue letter dated Jan. 12, 1984. Defendants presented substantial evidence that the May 12 letter had been sent by the EEOC and the likelihood that plaintiff or his counsel or both were aware of the first letter. Nevertheless, the Court denied the motion to dismiss after Jurado and his counsel submitted declarations, under pen-

alty of perjury, that the first letter had not been received.

On Oct. 10, 1984, defendants filed a motion for summary judgment attacking the remaining counts of the First Amended Complaint and the Revised Supplemental Complaint. After extensive briefing and oral argument, the Court granted in part and denied in part this motion. The Court dismissed Count 1 in its entirety. The Court found that Count 1 only stated claims based upon the defendants' alleged retaliation against Jurado for engaging in union organizational activities and voicing rights under a collective bargaining agreement. The Court held these claims to arise from Jurado's alleged engagement in "concerted activities" protected under Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. The Court held that the National Labor Relations Board had exclusive jurisdiction to hear claims stemming from allegations that an employee's right to engage in concerted activities had been abridged. See this Court's Order Filed Dec. 26, 1984, ¶¶ 1, 2, 3 and cases cited therein. The Court rejected the defendants' arguments that the remaining claims, all based upon discrimination, should be dismissed on theories of waiver by acceptance of severance pay and that they were barred by Jurado's refusal to arbitrate them.[5] As a result of the various motions listed above, the counts which are currently before the Court and which are subject to the instant Motion for Summary Judgment may be characterized as follows:

Count 2 survives only insofar as it states a cause of action under 42 U.S.C. § 1981. This section provides a cause of action for employment discrimination based on race;

5. There is no dispute as to the events leading to the stipulation which resolved the arbitration. At arbitration the parties could not agree as to the issues to be resolved. KIIS assumed and was prepared to argue the issues raised in the statement of issues for arbitration, quoted above, and the issues raised in the original complaint. KIIS was prepared to arbitrate whether the AFTRA agreement had been breached due to the "termination" of Jurado's employment for his refusal to acquiesce in KIIS's format changes. Jurado, however, demanded that the

only issues to be arbitrated were his newly-formulated "Retaliation Claims," i.e., that KIIS had discharged him in retaliation for his participation in union negotiations, and for his assertion of his alleged right to translations fees. KIIS first learned of this new theory on Nov. 12. The arbitration was continued until Nov. 21, 1982. AFTRA then requested that the grievance be withdrawn and the parties agreed to settle the arbitration. The stipulation was negotiated and signed on Nov. 22, 1982, by counsel representing Jurado, AFTRA, and KIIS.

Count 6 survives only insofar as it states a cause of action under 42 U.S.C. § 1985(3). This section provides a cause of action for victims of conspiracies against citizens on the basis of race;

Count 7 survives only insofar as it states a cause of action under 42 U.S.C. § 1986 for negligent failure to prevent the conspiracy alleged in Count 6;

Count 8 survives only insofar as it states a cause of action under the California Fair Employment and Housing Act for employment discrimination (Cal.Gov't Code § 12940(a));

The Revised Supplemental Complaint survives insofar as it states violations of Title VII.

The Court would expect that the extensive pretrial motions in this case would have narrowed the issues for trial. In fact, the Joint Pretrial Conference Order filed on Jan. 31, 1985, indicates that the issues have expanded with each new motion. The Court finds that it would be impossible to address the dozens of disputes between counsel as to what issues remain in the case and what issues do not remain. Nevertheless, there are certain disputes between plaintiff and defendants upon which this Court should make a record.

Jurado contends in the pretrial order, *See* § III, that this Court has somehow "adjudicated" the significance of the variance between Jurado's explanation of his termination in the Original Complaint, voluntary refusal to obey a management directive, and the explanation of the First Amended Complaint, termination before being given a chance to comply. The Court does not understand what Jurado means by the Court adjudicating this issue. If Jurado believes this to mean that the Court has determined the variation to be without significance, then plaintiff is mistaken. The Court has done no such thing. Defendants raised this variance issue in their second motion to dismiss. Defendants argued that this variance proved the First Amended Complaint a sham which should be dismissed under FRCP 11 and case law, *See* Defendants' Motion to Dismiss First

Amended Complaint. The Court did not address this argument of defendants' in its disposition of this motion. The contention that a person was terminated because he refused to comply with a directive followed by the contention that he was terminated before being given the opportunity to comply with the same directive are not so inconsistent as to prove the second contention a sham. The Court did not dismiss on the basis of the sham argument. The Court does not rule that this means the variance in the two pleadings is without significance. For example, the variance would certainly be admissible as an admission if this matter were to proceed to trial.

Jurado also contends that this Court made a finding whether he waived his right to bring discrimination claims by his acceptance of severance pay. *See* Pretrial Order at § III(a). This is not the case. The Court in its Order filed Dec. 26, 1984, found that "The record does not clearly indicate that the plaintiff voluntarily and knowingly waived his statutory rights." This finding merely signifies that the Court could not order summary judgment on the question of waiver. If this case were to proceed to trial, the defendants would be free to attempt to prove waiver.

The Court could go further, but to no advantage. The record of this case must speak for itself. The only issues before the Court as of the filing of the instant summary judgment motion are as listed above. In sum, the most concise statement of the case is that Jurado claims he was discriminatorily terminated by defendants because of his Native-American and Mexican-American heritage and that this act was in violation of 42 U.S.C. § 1981; 42 U.S.C. § 1985(3); 42 U.S.C. § 1986; Title VII of the Civil Rights Act; and Cal.Gov't Code § 12940(a). In order to proceed to trial, Jurado must demonstrate that these counts are based upon recognized theories of recovery. How Jurado's termination came about is hotly disputed. Jurado contends it occurred when he was directed to stop speaking Spanish on the air, but was not given time to comply. Defendants con-

tend that it occurred when he refused to abide by the management directive to stop speaking Spanish. The Court will find that any such distinction is meaningless. Of more importance is that Jurado must refute the arguments of defendants by putting forward facts which support the above claims in some legally recognized form.

## THE INSTANT MOTION FOR SUMMARY JUDGMENT

Having clarified the record, the current motion for summary judgment must be addressed. The Court will examine each of the remaining counts to determine whether each can survive summary judgment. The § 1981 count will be addressed first. Title VII and Cal.Gov't Code § 12940(a) will be discussed together as § 12940(a) tracks Title VII in all pertinent respects. 42 U.S.C. § 1985(3) will be discussed together with § 1986. If the former fails, then the latter cannot stand independently.

*42 U.S.C. § 1981*

Section 1981 states, in pertinent part: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, ... as is enjoyed by white citizens ...

Section 1981 was enacted under authority of section 2 of the 13th Amendment to enforce that amendment.

■ Jurado's claim is that the actions, motivated by some racial and ethnic animus, interfered with his right to contract.[6] Jurado appears to argue that the events which led to his termination were racially motivated and resulted in the disolution of his "oral contract" to exploit his bilingual radio personality. Specifically, Jurado argues that the management directive that he cease the use of Spanish on the air resulted in the breach of his oral contract with KIIS to develop his bilingual radio personality. This Court takes no position

as to whether this theory could support a claim under § 1981, or whether there is any evidence of an oral contract.

■ Defendants attack the § 1981 claim, as well as all others, on the ground that whatever actions they took are protected under the First Amendment of the United States Constitution, and the Communications Act of 1934. The Court agrees. A broadcaster has a statutorily imposed, exclusive, and nondelegable obligation to control its programming. *See, e.g., Columbia Broadcasting System v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 722 (1973). The evidence in this case is undisputed that the decision to tell Jurado to stop speaking Spanish was a programming decision.

The evidence in this case clearly indicates the KIIS decision to tell Jurado to stop the use of Spanish on the air was part of a series of programming decisions by KIIS, which was constantly changing its format. *See* Pre-trial Conference Order, Non-Contested Facts, ¶¶ 10, 15, 17, and 18; Jurado deposition at p. 47, lines 24–26; Defendants' Memorandum of Fact and Law (filed Jan. 10, 1985). Jurado himself has admitted the decision to discontinue his bilingual format was a programming decision:

Q. When was the first such discussion concerning your bilingual presentation, approximately?

\* \* \* \* \* \*

A. Well, throughout the entire time (Donald Benson) was there, it was always a subject with me and him.

Q. Well, when you say "it was always a subject," what do you mean?

A. Well, he would—he goes, "Well, lets's see how this sounds, Val. Let's— you know, bilingual presentation. Well, let's see how this sounds; we are going to do this, we are going to do that.

---

6. ¶ 50 of the First Amended Complaint reads "Plaintiff was terminated from employment on or about August 27, 1981, by J. Ray Padden acting on behalf of defendants' Eleven-Fifty by reason of plaintiff's ethnic background, national

origin, and race." This Court is unaware of any authority for a § 1981 action based on national origin. However, the claim is properly stated insofar as it alleges racial animus based upon race and ethnic background.

Don't say any Spanish, see what it sounds like."

"Fine." It was always—he just wanted to, you know, adjust—adjust the format, I guess.

Q. That was his job; isn't that right?

A. Right. . . .

Q. You didn't determine the format, did you?

A. No.

Q. That was Benson's job?

A. Well, that is the program director's job, yes.

Q. And he was the program director:

A. At that time, yes.

There is no evidence in the voluminous submissions of this case that put in dispute that fact that the order given to Jurado to stop speaking Spanish was anything other than a programming decision and based entirely upon programming concerns. As such, the programming decision is protected under the First Amendment and the Communications Act. KIIS had a right to tell Jurado to stop speaking Spanish on the air.

If Jurado's theory were to be permitted under § 1981, this would run squarely against defendants' First Amendment rights. As a result, this Court finds that Jurado has not put into dispute any fact which would support a § 1981 claim, and must grant summary judgment on this issue. As a practical matter, to hold otherwise would hold the broadcast industry hostage to its announcers. If an announcer were in a protected class, he could sue under § 1981 and subject the radio station to this Court's analysis as to what are proper programming decisions. Such a result would do great damage to the First Amendment.

The Court must note that a different result might arise if Jurado were terminated for some provable racial reason. However, this is not the case in the instant action. It is undisputed that Jurado's termination came about as a result of the programming decision and Jurado's subsequent hesitation about conforming to it. This is true regardless of whether the Court adopts Jurado's or defendants' description of the chain of events leading to the termination. Defendants say he refused to comply, Jurado states that he was not given time to comply. Either way, the evidence was that Jurado was hesitant to comply and it is this that led to the termination.

*VII and Cal.Gov't Code § 12940(a)*

Cal.Gov't Code § 12940(a) is largely identical to Title VII, except that it permits a jury trial. For this reason, all comments which follow that refer to Title VII are intended to also refer to § 12940(a).

The Court finds that all of defendants' arguments concerning the First Amendment and the Communications Act of 1934, described in relation to the § 1981 claim, are equally applicable to Title VII. It is manifest that Jurado's termination was the result of a programming decision by defendant. This decision is protected under the First Amendment and the Communications Act. Further, there are alternative and independent grounds for the grant of summary judgment as to Title VII.

■ Title VII proscribes employment discrimination on account of race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e *et seq.* Jurado is basing his claim on race and national origin. There are two theories under which Jurado can develop his Title VII case. Under the disparate treatment theory, he would allege that he has been treated less favorably than his peers because of race and national origin. Thus in a disparate treatment case Jurado must prove discriminatory animus toward himself. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). One form of disparate treatment case, or at least closely related, is based upon a theory of retaliation whereby Jurado would have to allege that he had been intentionally discriminated against for his assertion of Title VII rights. 42 U.S.C. § 2000e–3 specifically proscribes such reprisals or retaliation. *See, e.g., Ayon v. Sampson,* 547 F.2d 446 (9th Cir.1976). The second theory is

called the disparate impact theory. Under this, Jurado would have to allege that a facially neutral test or employment criterion of defendants disproportionately disqualified the members of his protected class, based on race and national origin, from employment. Further, Jurado would have to allege that the criterion was not job related. The disparate treatment theory is distinguishable from the disparate impact theory in that Jurado would not have to prove any specific animus directed toward him, in the latter. *See, e.g., Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Jurado's complaint does not lay out what theory he hopes to prove a Title VII violation under, being rather vague, general and conclusory. Combing the briefs, depositions, declarations, and exhibits of this summary judgment motion, the Court becomes somewhat mystified as to the nature of Jurado's theory, but will test Jurado's claims against all the possibilities.

## A. DISPARATE TREATMENT

The Court finds that Jurado has not proffered any evidence to support even a prima facie disparate treatment case. As defendants correctly point out, Jurado has not put into dispute any evidence tending to show that racial or national origin animus was directed toward him such as to impair his employment. The evidence is undisputed that Jurado was told not to speak Spanish over the air. However, as noted, this was purely a programming decision. The evidence concerning the status of Jurado's employment is also undisputed. It indicates that Jurado was informed that his employment and position would continue despite the programming change. Jurado does not cross the legal bridge from complaining that KIIS should not have told him to cease the use of Spanish, to proving in what manner this caused him disparate treatment in his employment.

He points to the fact that another station announcer, Rick Dees, who is white, uses a Spanish type character on his radio program and has not been told to stop the use

of this character. The Court cannot mold this fact into a disparate treatment claim. The evidence is undisputed that Jurado is fluently bilingual, and that initially his program at KIIS was entirely in English. After some time, Jurado thought he might improve the program by adopting a bilingual format, alternating the use of English and Spanish. KIIS gave its approval. KIIS, later, in response to a study of its market and its ratings, told Jurado to return to an all English format. The facts concerning Rick Dees are also undisputed. Starting work for KIIS in 1981, Dees used in the course of his program numerous characters, usually through a phone-in format, which characters adopt personalities, e.g., "John Revolting," "Chuy from La Puente," "Candy Plastique." *See* Dees Deposition at pages 50, 56–57. Some of these characters adopt a Spanish accent and use Spanish words. Dees' use of these characters is at the discretion of the KIIS. The following deposition testimony from Mr. Dees is particularly noteworthy:

Q (Plaintiff's Counsel): Now, when any of these characters speaks Spanish in the course of their employment for Dees Creations now, who puts those Spanish words in their vocabulary? Is it something that the person who does the voice has a responsibility for or is it some other person?

A (Dees): It's both. Sometimes I do. And sometimes they do.

Q (Plaintiff's Counsel): Do you decide when you do and when they do, or does somebody else decide, or is it some type of creative process that you do together?

A (Dees): Well, ultimately, the management of the station decides.

Q (Plaintiff's Counsel): In what respect? How do they do that?

A (Dees): They—they monitor the show and decide what should go on and what should not go on. And I adhere to their choices.

Q (Plaintiff's Counsel): Has management at KIIS–FM ever vetoed any of your selection choices?

A (Dees): Oh, yeah.

\* \* \* \* \* \*

Q (Plaintiff's Counsel): Now, at any time that you've been working at KIIS, have you been instructed by station management not to use Spanish?

A (Dees): Yes.

Q (Plaintiff's counsel): How many—by whom?

A (Dees): By Wally Clark and by—I think Don Benson mentioned it one time, too.

In sum, the record is clear that KIIS constantly changed its programming, and that these changes were imposed upon all employees in a flexible and individual way dictated by programming concerns. The record is bereft of any evidence tending to put into dispute that Jurado was selected out, on the basis of his race and origin, for some disability.

### 1. RETALIATION CLAIMS

As noted, *supra,* retaliation claims are a type of disparate treatment case which alleges that a plaintiff has been discriminated against in retaliation for relying upon Title VII rights. Although retaliation claims surface in the Revised Supplemental Complaint alleging Title VII violations, in Count 2 under § 1981, and in Count 8 under Cal.Gov't Code § 12940, the Court finds that all of these retaliation claims, except those arising under Title VII, have heretofore been dismissed by the Court. In Count 2, Jurado asserts that defendants retaliated against him for participating in collective bargaining negotiations and for efforts to secure a translator's fee provision in the collective bargaining agreement. All such claims were dismissed in the Court's Dec. 21, 1984, Order Granting Partial Summary Judgment because of Jurado's failure to exhaust his administrative remedies before the National Labor Relations Board. The Count 8 retaliation claims are merely an incorporation by reference of the Count 2 claims, and fall with them.

What remains is the retaliation claim based upon Title VII. This claim, found at paragraph 12 of the Revised Supplemental Complaint is ambiguous concerning the nature of the claim. Taking together all of Jurado's contested issues of fact, set forth in the joint pretrial order, the Court finds that Jurado bases his claim on two theories. First, that he was retaliated against for participating in union collective bargaining activities. As noted, this theory has already been dismissed by the Court. Second, Jurado contends that KIIS implemented an "English only" rule; that this rule is illegal under Title VII; that Jurado opposed this rule; and that he was fired in retaliation for his opposition.

The Court will discuss, *infra,* the law concerning English only rules. It is sufficient for the purposes of the instant analysis to note that such rules are sometimes held to be violations of Title VII. Assuming, for the purposes of argument only, that KIIS had such a rule, Jurado could survive summary judgment if he could offer evidence that (1) he opposed the unlawful rule, (2) he suffered an adverse employment action, and (3) there is a causal link between the opposition and the adverse action. *EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1012 (1983).

The Court finds no evidence whatsoever that Jurado ever opposed any "English only" rule. The record is clear that Jurado did not want to change his format, for personal reasons, and that he never opposed the action for any reason other than his own interest. Jurado's deposition states that he did not want to comply with Don Benson's directive to stop speaking Spanish, because this would not be good for the value of his radio personality. *See* Jurado Depo. at pp 64–66. The Jurado deposition indicates that he was concerned when told about the change in format about severance pay, not any "English only" rule:

I told him I wouldn't quit (Don Benson). 'If your intention is harrassing me and telling me how bad my show is and the numbers are down, if you want me to quit, Don, you want me to quit, if you want me out, you're going to have to fire

me, because if I quit, I don't get severance.'

In Jurado's Statement of Position, filed on February 10, 1982, with the EEOC, his explanation of the events leading to his termination were as follows: "complainant (Jurado) was given the ultimatum that he change his character into a solely English speaking character, or be terminated from employment. Complainant refused to accede to management's demand and was terminanted (sic) from employment on August 27, 1981." *See* Defendants' Supplemental Submission (filed July 29, 1985). In an affidavit submitted to the National Relations Board, on February 5, 1982, and written in his own hand, Jurado explains his termination:

> Benson wanted me to stop speaking Spanish altogether. I did not comply with Benson's wishes because it would have taken my character away. He told me to speak English or quit. I told him that I would not quit, he would have to fire me. I refused to give up my bi-lingual presentation. We talked for a while and finally he suggested that we talk the next day. No one else was present during the meeting. Nothing was said about AFTRA. Nothing was said about (illegible word). Nothing was said about a raise.

In his application for unemployment insurance, attached as Exhibit 6 to the Jurado depo., Jurado explains his termination as follows, "Station was taking a different direction in formats and my services were no longer needed." Asked to explain the reason for his leaving KIIS, on the same form, he indicates, "difference in program philosophy." The Court's recitation of these pieces of evidence, which could go on, is to show that there is no evidence in Jurado's deposition, in anyone else's deposition, or anywhere else that Jurado opposed any "English only" rule prior to or around the time of his termination. KIIS was logically unable to retaliate against an opposition of which it was unaware, and could not have known. Jurado has not offered, in this summary judgment, any evidence to the contrary, preferring to rely upon allegations. Unfortunately, summary judgments must be decided on evidence, not allegations.

## B. DISPARATE IMPACT

The only basis for a Title VII claim based upon disparate impact that this Court can find raised by either the pretrial order or the brief in opposition to this motion, is one based upon an "English only" rule theory. Under such a theory, Jurado would have to prove that a rule existed requiring the use of English only while on the job, that this rule disparately impacted a class protected under Title VII, of which he was a member, and the the rule was not job related. *See, Garcia v. Gloor,* 618 F.2d 264 (1980).

This theory is without merit. The evidence, described in the Court's disparate treatment discussion, is clear that KIIS had a flexible approach as to when Spanish could be spoken that was tailored to the needs of each individual. There was no "rule." Assuming for the purposes of argument that a rule existed, Jurado could not be disparately impacted since he was fluently bilingual. An express holding of the *Garcia* case is that fluently bilingual employees cannot sue under an "English only rule" theory, because they can comply with the rule and not be affected by it. The Court finds that Jurado has not put into dispute any facts which might support a Title VII claim based upon disparate impact.

## 42 U.S.C. §§ 1985(3), 1986

The Court has earlier ruled that these claims, as well as all the others, are subject to summary judgment based upon the First Amendment and the Communications Act. As a separate and independent ground for the grant of summary judgment, the Court adopts the analysis of law and facts set forth in defendants' motion at pages 44–53, to which the Court can add nothing.

## CONCLUSION

Defendants' motion for summary judgment must be granted. Whatever acts Jurado complains of are protected programming decisions under the First Amendment

and the Communications Act. Further, each individual claim found in the First Amended Complaint and Revised Supplemental Complaint is subject to summary judgment for Jurado's failure to put into dispute any fact which might support these claims under any theory of law. For the reasons stated above, a judgment conforming to this Memorandum Opinion will be entered separately.

IT IS SO ORDERED.