813 F.2d 1406
 43 Fair Empl.Prac.Cas. 870,
42 Empl. Prac. Dec. P 36,960, 55 USLW 2598,
106 Lab.Cas. P 12,310
 Valentine JURADO, aka Val Valentine, Plaintiff-Appellant,
v.
ELEVEN-FIFTY CORPORATION, a Delaware Corporation d.b.a.
Radio Station KIIS-FM, Los Angeles; the Pacific and
Southern Company, Inc., a Delaware Corporation; Combined
Communications Corporation, an Arizona Corporation; Gannett
Company, Inc., a Delaware Corporation, Defendants-Appellees.
 No. 86-5606.
 United States Court of Appeals,
Ninth Circuit.
 Submitted on Briefs Jan. 8, 1987.
Decided April 2, 1987.
 
 William A. Snyder, Irvine, Cal., for plaintiff-appellant.
 Robert L. Murphy, Leslie A. Swain, Diane J. Crumpacker, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FERGUSON, BOOCHEVER and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Valentine Jurado appeals a summary judgment denying his race and national origin discrimination claims under 42 U.S.C. Sec. 1981 (section 1981) and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Secs. 2000e to e-17, and his claims for breach of a collective bargaining agreement under section 301 of the Labor Management Relations Act (LMRA Sec. 301), 29 U.S.C. Sec. 185. Jurado's claims stem from his discharge as a disc jockey by defendant owners and operators of Los Angeles radio station KIIS-FM (collectively "KIIS") after KIIS told him to broadcast only in English. We affirm.
 
 FACTS
 
 2
 Jurado is a radio announcer of Mexican-American and Native-American descent who is bilingual in Spanish and English. He began performing as a disc jockey at KIIS under the name "Val Valentine" in 1977. For several years, he broadcasted in English only. At the request of the then program director, Jurado started using some "street" Spanish words and phrases on the air in an effort to attract Hispanic listeners. A consultant later concluded that the bilingual format hurt KIIS' ratings because it confused listeners about KIIS' programming, the rest of which was in English. After reviewing the station's Arbitron ratings, which showed no increase in the program's target Hispanic audience, the new program director, Donald Benson, agreed with the consultant's recommendation. On August 27, 1981, Benson told Jurado to stop speaking Spanish on the air, assuring Jurado of continued employment if he complied. What happened the next day is disputed. Jurado claims he was fired without an opportunity to comply with the order. KIIS contends that Jurado quit, but for the purpose of summary judgment admits that he was fired for refusing to comply.
 
 
 3
 Jurado brought an action against KIIS in federal district court under, inter alia, section 1981, alleging in part that KIIS fired him for his refusal to comply with its instructions to cease broadcasting in Spanish. The district court dismissed the complaint with leave to amend, in part because a dismissal resulting from a voluntary refusal to abide by that instruction was not actionable under section 1981. Jurado then filed a first amended complaint under 42 U.S.C. Secs. 1981, 1985(3) and 1986, Cal.Gov't Code Sec. 12940(a), and LMRA Sec. 301, alleging that KIIS discharged him without giving him an opportunity to conform his broadcast format to the English-only format. The district court held that these allegations stated a section 1981 claim. Jurado later filed a supplemental complaint adding claims under Title VII. The district court dismissed the LMRA Sec. 301 claims for lack of jurisdiction. The court later granted KIIS' motion for summary judgment of the section 1981, Title VII and Cal.Gov't Code Sec. 12940(a) discrimination claims because: (1) Jurado had not shown retaliation, disparate treatment, or disparate impact in his employment; and (2) KIIS' actions were protected under the First Amendment and section 326 of the Communications Act of 1934, 47 U.S.C. Sec. 326. Jurado v. Eleven-Fifty Corp., 630 F.Supp. 569 (C.D.Cal.1985). Jurado timely appeals the judgment of his LMRA Sec. 301, Title VII and section 1981 claims. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 STANDARD OF REVIEW
 
 4
 We review a grant of summary judgment de novo, and will affirm only if, viewing the evidence most favorably to the nonmoving party, there are no genuine issues of material fact and the district court correctly applied the substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 DISCUSSION
 I. TITLE VII DISPARATE TREATMENT
 
 5
 Jurado contends that KIIS discharged him in violation of Title VII based on a disparate treatment theory. To prevail he must ultimately prove that KIIS intended to discriminate against him in the dismissal. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In a disparate treatment case, we apply the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973):
 
 
 6
 [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 7
 Yartzoff v. Thomas, 809 F.2d 1371, 1373-74 (9th Cir.1987) (quoting Lowe v. City of Monrovia, 775 F.2d 998, 1005 (1985), amended, 784 F.2d 1407 (9th Cir.1986)). To establish a prima facie case of disparate treatment, the employee must offer evidence that "give[s] rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; Yartzoff, 809 F.2d at 1374. Failure to allege "specific facts" that establish the existence of a prima facie case renders a grant of summary judgment appropriate. Yartzoff, 809 F.2d at 1374; Palmer v. United States, 794 F.2d 534, 536-39 (9th Cir.1986); see Fed.R.Civ.P. 56(e). Jurado's prima facie disparate treatment case fails because there is insufficient evidence that KIIS discharged him for discriminatory motives.
 
 
 8
 There is no genuine dispute that Jurado was fired for refusing to comply with KIIS' decision to change his format to English only, after KIIS assured him of continued employment if he did so. Jurado alleged in his amended complaint that he was fired without the opportunity to conform to the format change. However, Jurado stated in an affidavit to the National Labor Relations Board (NLRB) that:
 
 
 9
 Benson wanted me to stop speaking Spanish altogether. I did not comply with Benson's wishes because it would have taken my character away. He told me to speak English or quit. I told him I would not quit, he would have to fire me. I refused to give up my bi-lingual presentation. We talked for a while and finally he suggested that we talk the next day.
 
 
 10
 Also, in his original unverified complaint he stated that he was fired for refusing to give up his bilingual format. Further, his counsel filed a statement of position with the Equal Employment Opportunity Commission (EEOC) in 1982 which stated: "[Jurado] was given the ultimatum that he change his character into a solely english [sic] speaking character, or be terminated from employment. [Jurado] refused to accede to management's demand and was terminanted [sic] from employment on August 27, 1981." Jurado's NLRB affidavit statement shows that there is no genuine dispute that Jurado was fired for refusing to comply with the English-only order. The party opposing summary judgment cannot create a genuine question of fact by contradicting his prior sworn statement. See Foster v. Arcata Assocs., 772 F.2d 1453, 1462-63 (9th Cir.1985) (party's declaration contradicting her deposition created no genuine issues of fact and summary judgment appropriate), cert. denied, --- U.S. ----, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).
 
 
 11
 Jurado nevertheless argues that the English-only order itself was racially motivated and that his refusal to comply with it was therefore not a proper ground to discharge him. We need not decide whether an employee's refusal to comply with a racially motivated order states a Title VII claim, for we find insufficient evidence that the English-only order was racially motivated. There is no genuine dispute that the order was a programming decision motivated by marketing, ratings, and demographic concerns. The evidence shows that KIIS adopted Jurado's bilingual format to improve his show's performance, and later dropped it in response to a study of the show's market and ratings. Benson, the program director, was worried that the bilingual format might cause listeners to become confused about the nature of KIIS' programming and lose interest in the station. Also, the bilingual format had not improved KIIS' performance in the target Hispanic community.
 
 
 12
 Jurado claims that there is evidence that the order was racially motivated. He notes that a consultant wrote in reference to Jurado's program that KIIS was "preoccupied with ethniticity [sic] to a frightening degree." This statement fails to show racial animosity toward Jurado. In context, ethnicity refers to the "ethnic" audience market, as contrasted to KIIS' target "pop" or "top 40" market. Jurado also cites Benson's alleged statement that Jurado should drop the bilingual format because Jurado's show was "too ethnic" and KIIS did not "need the Mexicans or the blacks to win in L.A." Benson was referring to KIIS' demographic and marketing concerns, not expressing racial animus toward Jurado. Success in radio depends on appealing to specific segments of the listening community. Station formats are often directed at particular ethnic, racial, or social groups. The mere fact that a station adopts a format designed to entice a target ethnic audience does not tend to show racial animus in employment.
 
 
 13
 Jurado also argues that KIIS' failure to prohibit Rick Dees, a white KIIS disc jockey, from using Spanish on his program shows unequal treatment based on race. Dees' program features fictional comic call-in personalities, several of which use some Spanish from time to time. That KIIS allows Dees to use Spanish on his program, but does not permit Jurado to do so on his, does not suggest KIIS intended to discriminate against Jurado. KIIS permits Dees to use some Spanish because his program is popular, not to place Jurado at some disadvantage. The two programs use different formats and have different audiences. Discriminatory motive cannot be divined by comparing individual decisions about dissimilar programs. Cf. Montgomery v. Yellow Freight Sys., 671 F.2d 412, 413 (10th Cir.1982) (no Title VII violation to discharge black employee, but not others, for breach of "no sleeping" rule if situations not comparable).
 
 
 14
 Jurado further argues that KIIS' English-only order itself is a discriminatory discharge criterion as used against a bilingual person such as himself. See Diaz v. American Tel. & Tel., 752 F.2d 1356, 1361 (9th Cir.1985) (evidence of employment action based on discriminatory employment criteria satisfies prima facie case of disparate treatment). We disagree. An employer can properly enforce a limited, reasonable and business-related English-only rule against an employee who can readily comply with the rule and who voluntarily chooses not to observe it as "a matter of individual preference." Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); see also Guidelines on Discrimination Because of National Origin, 29 C.F.R. Sec. 1606.7 (1986) (EEOC presumes employer's English-only rule is national origin discrimination if enforced at all times, but permits rule if enforced only at certain times, justified by business necessity, and adequate notice is provided); cf. Saucedo v. Brothers Well Serv., 464 F.Supp. 919 (S.D.Tex.1979) (employer who fired Spanish language dominant employee for using two words of Spanish to coworker in breach of informal English-only rule violated Title VII). Jurado does not dispute his English proficiency. He broadcasted in English for several years before going to the bilingual format. He had the ability to conform to the English-only order, but chose not to do so. The order was limited to on-air time and was reasonably related to KIIS' exercise of discretion over its broadcast programming.
 
 
 15
 It is not genuinely disputed that KIIS discharged Jurado for refusing to comply with its order to broadcast only in English. Jurado has failed to produce sufficient evidence that the order was racially motivated or that he was discharged on the basis of discriminatory employment criteria. The court properly granted summary judgment of the disparate treatment claim.
 
 II. TITLE VII RETALIATION
 
 16
 An employer violates Title VII by retaliating against an employee who has "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. Sec. 2000e-3(a). The order and allocation of proof for Title VII disparate treatment cases outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), also governs actions for retaliatory discharge under section 704(a). Miller v. Fairchild Indus., 797 F.2d 727, 730 (9th Cir.1986). To establish a prima facie case of discriminatory retaliation, Jurado must show that: (1) he engaged in activity protected under Title VII, (2) his employer subjected him to an adverse employment action, and (3) the employer's action is causally linked to the protected activity. Yartzoff, 809 F.2d at 1375; Miller, 797 F.2d at 731. Jurado contends that he believed the English-only order violated Title VII, that he opposed the order as discriminatory, and that he was fired in retaliation for his opposition. KIIS concedes that it fired Jurado for failing to comply with the English-only order, and so adverse employment action and causal link are undisputed. Also, the employee need only reasonably believe that the employer has engaged in an unlawful employment practice. EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir.1983). While the English-only order does not violate Title VII, see supra section I, opposition based on a reasonable belief that the order is discriminatory is protected.
 
 
 17
 However, Jurado has failed to produce evidence that he engaged in any activity protected by Title VII. Cf. Crown Zellerbach, 720 F.2d at 1012-13 (letter protesting unspecified "racism" and "discrimination" in employer's practices is protected opposition activity); Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir.1978) (employee's letter to HUD complaining of employment discrimination against him and other Hispanics is protected). Jurado has not shown that he ever opposed the format change as discriminatory before he was fired. He merely opposed the change for personal reasons--he wanted to preserve the value of his radio personality. Jurado claims he did oppose the order as discriminatory by telling Benson that "a lot of the numbers that I was getting on the air, a lot of those numbers were from Hispanic people, the presentation that I did at KIIS, my success at KIIS and the numbers that I had, a lot of them was attributed to the Hispanics and that ethnic flavor." However, his statement merely expressed his fear for his personal "success at KIIS" and his "numbers," not his concern about discrimination against him or other Hispanics. The district court correctly granted summary judgment of the retaliation claim.
 
 III. TITLE VII DISPARATE IMPACT
 
 18
 A disparate impact case involves a facially neutral employment practice that disproportionately disadvantages one group as against another. Palmer, 794 F.2d at 538. To establish a prima facie case, the employee must identify an employment practice which has a significant adverse impact on the protected group, id., but need not show the employer intended to discriminate, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
 
 
 19
 The district court found Jurado's only basis for a disparate impact claim was that the English-only order somehow disproportionately disadvantaged Hispanics. The court found this theory was without merit as applied to Jurado because Jurado was fluently bilingual and could easily conform to the order. 630 F.Supp. at 580 (citing Garcia v. Gloor, 618 F.2d at 270). We agree.
 
 IV. SECTION 1981
 
 20
 An employee may seek relief under both Title VII and section 1981 for racial discrimination in employment. Lowe, 775 F.2d at 1010. As with Title VII disparate treatment and retaliation actions, claims under section 1981 require proof of intentional discrimination. Id. The same standards apply, and facts sufficient to give rise to a Title VII claim are also sufficient for a section 1981 claim. Id. Because Jurado has not put forward genuine issues of fact regarding disparate treatment or retaliation under Title VII, the district court correctly dismissed his section 1981 claims based on the same facts.
 
 V. LMRA SEC. 301
 
 21
 Jurado claimed breach of the collective bargaining agreement (Agreement) then in effect between Jurado's union, the American Federation of Television and Radio Artists (AFTRA), and KIIS, under section 301(a) of the LMRA, 29 U.S.C. Sec. 185(a). He alleged KIIS retaliated against him in breach of the Agreement for his work for AFTRA in collective bargaining negotiations and for his demanding translation fees. The district court found that these retaliation claims were within the NLRB's exclusive jurisdiction and granted KIIS summary judgment. Jurado argues that the district court had concurrent jurisdiction.
 
 
 22
 Jurado's engaging in union negotiations and voicing rights under a collective bargaining agreement (the right to translation fees) are "concerted activities" protected under section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 157. KIIS' alleged retaliation against Jurado for engaging in these concerted activities would be an unfair labor practice under section 8(a)(1) of the NLRA, 29 U.S.C. Sec. 158(a)(1). Violations of an employee's right to engage in concerted activities are within the exclusive jurisdiction of the NLRB, except when the activity is also arguably a breach of a collective bargaining agreement, in which case the federal district court has concurrent jurisdiction under LMRA Sec. 301. Hotel & Restaurant Employees, & Bartenders Union Local 703 v. Williams, 752 F.2d 1476, 1478 (9th Cir.1985).
 
 
 23
 The district court properly dismissed both of Jurado's claims for lack of jurisdiction. First, no provision of the Agreement is breached by retaliation for engaging in collective bargaining negotiations. Jurado's claim of breach of the Agreement for such retaliation is thus within the NLRB's exclusive competence. Likewise, the Agreement is not breached by retaliation for demanding translation fees. Jurado cites language in the Agreement providing that a disc jockey be paid for translation work. That provision supports a breach of contract claim under LMRA Sec. 301 for failure to pay for translation work, not one of retaliation for asserting that contract right. The claim of retaliation for demanding translation fees is also in the NLRB's exclusive jurisdiction.
 
 CONCLUSION
 
 24
 Because we hold that there are no genuine issues of fact as to Jurado's Title VII and section 1981 claims, we do not address the district court's other ground for summary judgment: that KIIS' actions were protected under the First Amendment and the Communications Act of 1934. The judgment is AFFIRMED.