Lanette Bengel GALLAGHER, Plaintiff,

v.

KLEINWORT BENSON GOVERNMENT SECURITIES, INC., Defendant.

No. 86 C 1455.

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1988.

On Motion to Vacate Oct. 24, 1988.

Abraham N. Goldman, John R. Wylie, Abraham N. Goldman & Assoc., Chicago, Ill., for plaintiff.

Bennett L. Epstein, Lee Ann Russo, Cofield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff Lanette Bengel Gallagher brings this two count amended complaint which alleges that the defendant Kleinwort Benson Government Securities, Inc. discriminated against her on the basis of her sex in violation of the Equal Pay Act of 1963 ("Act"), 29 U.S.C. § 206(d)(1) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–1 to 2000e–17. The defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court grants the defendant's motion for the following reasons.

### I

#### *Rule 56 Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate when the moving party uses the

> pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, [to] show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). A material fact is one that "must be outcome determinative under the applicable law." *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (substantive law determines material facts); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). A genuine dispute about a material fact arises when "the evidence is such that a reasonable jury could return a verdict for that party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

After the movant has made a properly supported summary judgment motion, "the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial." *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir. 1986); *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986) (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.") The nonmovant *may not* rely on the allegations or denials in its pleadings to establish a genuine issue of fact. *See* Fed. R.Civ.P. 56(e). Furthermore, summary judgment *must* be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Finally, "the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses." *Valentine v. Joliet Township High School District*, 802 F.2d 981, 986 (7th Cir.1986) (emphasis added).

## II

### Factual Background

The pertinent undisputed facts are as follows. In August 1977, Gallagher began her employment at Kleinwort as a head cashier. Her starting salary was $10,150 per year. In September 1979, Gallagher and another woman were promoted to the position of assistant repurchase trader. She was paid a salary of $19,540 a year plus a subjective bonus to be determined by management. In January 1981, Gallagher was again promoted to the position of repurchase trader. Her salary increased to $27,000 a year. In addition, she became eligible for an objective bonus based on individual profitability. The objective bonus is calculated by subtracting two times a trader's base salary from his or her profit during the calendar year and multiplying the resulting figure by ten percent. Gallagher received gradual increases in her base salary in the ensuing years. In 1982, her base salary increased to $33,000. In 1983, she earned a $38,500 base salary in addition to a $155,844 bonus. In 1984, her base salary was $46,000 plus a $143,248 bonus. In 1985, her base salary was raised to $53,000 prior to her termination.

During the course of her employment at Kleinwort, Gallagher approached her superiors on several occasions about the low level of her base salary. In 1983, for example, she approached Allen Donald, Kleinwort's former deputy trading manager. Gallagher Deposition, April 18, 1986, at 110. She stated

[t]hat [she] felt that [she] was on the lower end of the scale and that [she] had been a top producer and that [she] wasn't real happy with [her] raise and [she] wanted to know why it was still so low.

*Id.* at 112. Donald stated that she was "really further ahead making what [she] was given as opposed to making more money" on her salary. *Id.* Gallagher stated that it was unfair. Donald stated that the amount of her salary raise was going to remain the same. In December 1984, Gallagher also brought her salary concerns to Paul Dziubek, her supervisor. After receiving her yearly raise, Gallagher said that she was not pleased with her raise because she had previously been promised

## 1404

more compensation. Gallagher Deposition, June 10, 1986, at 37. Moreover, she felt that the raise was unfair since she "was one of the top producers consistently for the last five years and one of the lowest paid." *Id.* Dziubek, who did not deny her statement, said that he would look into it. *Id.* Gallagher had a follow-up conversation with Dziubek regarding her salary in January 1985. She asked him if anything had come up about her raise. *Id.* at 39. He said no but that it was being looked into. *Id.* Beginning in December 1981, Kleinwort management formally reviewed Gallagher's performance as a repurchase trader on at least four occasions. Kleinwort also conducted informal reviews of Gallagher's performance. She received many reprimands and criticisms during these reviews. Kleinwort terminated Gallagher's employment in February 1985.

### III

### *Equal Pay Act*

■ Gallagher alleges a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), in Count I of her amended complaint. To establish a prima facie case of discriminatory compensation under the Act, Gallagher must prove "that she received less pay than a male for equal work requiring equal skill, effort and responsibility under similar working conditions." *Covington v. Southern Illinois University*, 816 F.2d 317, 321 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 146, 98 L.Ed.2d 101 (1987). Kleinwort moves for summary judgment on the grounds that Gallagher cannot show that she received less pay than the male traders that she compares herself to. Gallagher asserts that the following traders received higher wages than her for performing

equal work: Martin Kaiser, Glen Noren, Tom Mangan, Greg Silver, Peter Franz, Robert Schumacher, Marcus Schwartz, Clark Pleiss, Donald Eden, Levor Garnaas, Frank Oddo, Wendell Kapustiak, Mark Lahey, and Joseph Persak. Gallagher's Answers and Supplemental Answers to Interrogatories at 3.

The definition of "wages" for the purposes of the Act is found at 29 C.F.R. § 1620.10.[1] Under the Act the term "wages"

> includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes *all* forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, *bonus,* uniform cleaning allowance, hotel accomodations, use of company car, gasoline allowance, or some other name.

29 C.F.R. § 1620.10 (emphasis added). Thus, under this definition, *any* bonus received by a trader will be included within his or her wage. Gallagher concedes that her total compensation exceeded that of almost every other trader. Gallagher Deposition, January 14, 1987, at 44. In 1984, her last full year of employment, Gallagher's "wages" were higher than all of the traders named above with the exception of Frank Oddo, the firm's vice president.[2] *See* Kleinwort's Rule 12(e) Statement, Appendix B. As a result, Gallagher has failed to present any evidence showing that the male traders with whom she compares herself with received greater wages than her own.[3] Consequently, her Equal Pay Act

---

**1.** The court notes that both parties operated under the mistaken belief that the definition of "wages" was found in 29 C.F.R. § 800. The Equal Employment Opportunity Commission rendered the latter section obsolete and of no legal effect on August 20, 1986 when it published 29 C.F.R. § 1620. *See* 52 Fed.Reg. 2518 (1987).

**2.** Oddo's total compensation is not revealed by Kleinwort. However, even assuming Oddo's total "wages" exceeded Gallagher's, she has not shown that the two performed equal work. In-

deed, such an inference would be unwarranted. Oddo was an officer. As Gallagher concedes, it is understandable that officers had higher wages than hers. Gallagher Deposition, April 18, 1986, at 167. Consequently, the two cannot as a matter of law, or logic, be considered to have performed jobs requiring equal skill, effort, and responsibility.

**3.** Kleinwort also contends that the other traders did not perform jobs requiring equal skill, effort, and responsibility under similar working

claim fails. Accordingly, Kleinwort is entitled to summary judgment on Count I.

## IV

### Title VII: Wage Discrimination

■ Gallagher brings Count II of her amended complaint pursuant to Title VII, 42 U.S.C. § 2000e–1 to 2000e–17. She alleges two causes of action within this count. Her first cause of action is for discriminatory compensation. The Seventh Circuit has held that a plaintiff must "meet the equal pay standard of the Equal Pay Act to prove [her] Title VII sex discrimination in wages claim" unless she can present " 'direct evidence that an employer has *intentionally* depressed a women's salary because she is a woman.' " *American Nurses' Association v. State of Illinois,* 783 F.2d 716, 721 (7th Cir.1986), *quoting County of Washington v. Gunther,* 452 U.S. 161, 204, 101 S.Ct. 2242, 2265, 68 L.Ed. 2d 751 (1981) (emphasis in original); *Equal Employment Opportunity Commission v. Sears Roebuck & Co.,* 839 F.2d 302, 343 (7th Cir.1988). The Supreme Court found an example of such intentional sex discrimination in *Gunther* where the defendant had set "the wage scale for female guards, but not for male guards, at a level lower than its *own* survey of outside markets and the worth of the jobs warranted." *Gunther,* 452 U.S. at 166, 101 S.Ct. at 2246 (emphasis added).[4]

In this case, Gallagher attempts to establish that Kleinwort engaged in intentional sex discrimination. She again raises the argument that she was paid less than the male traders. This argument fails for the reasons stated above in the court's discussion of the calculation of Gallagher's wages in connection with the Equal Pay Act claim.[5] Gallagher also asserts that she was the only female who became a full trader, that the only other female traders hired were made assistant traders, and that none of the female traders were hired from outside of the company. No statistical evidence is proffered in support of these assertions. *Cf. Sears, Roebuck & Co.,* 839 F.2d at 322–340. In any event, this type of circumstantial evidence is insufficient to meet the *Gunther* standard. *See Id.* at 392 (even if "the statistics showed discrimination, we are not at all sure that this type of indirect, statistical evidence of discriminatory intent would be sufficient under *Gunther.*") Thus, Gallagher must meet the equal pay standards of the Equal Pay Act to prove her Title VII claim. *Id.* at 343. As stated above, she has failed to make a sufficient showing to meet this standard. Accordingly, this portion of her Title VII claim fails.

## V

### Title VII: Retaliation

■ Gallagher also alleges that Kleinwort retaliated against her for opposing a practice that is unlawful under Title VII. This claim is cognizable under 42 U.S.C. § 2000e–3(a).[6] Gallagher must show that

---

conditions. The court expresses no opinion on this point.

4. The court further noted that it was not required "to make its own subjective assessment of the value of the male and female guard jobs, or to attempt by statistical technique or other method to quantify the effect of sex discrimination on wage rates." *Id.* at 181, 101 S.Ct. at 2253.

5. Title VII provides in pertinent part that it is an unlawful employment practice for an employer to discriminate against any individual with respect to his *compensation,* terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex* or national origin....
42 U.S.C. § 2000e–2(a) (emphasis added). It is improbable that the term "compensation" would

not encompass the bonuses received by Kleinwort's traders in light of the plain meaning of the word and the Equal Pay Act definition of compensation found in 29 C.F.R. § 1620. *See Kouba v. Allstate Insurance Co.,* 523 F.Supp. 148, 158 (E.D.Ca.1981), *rev'd on other grounds,* 691 F.2d 873 (9th Cir.1982) (Regulation defining "wages" for the purposes of the Equal Pay Act is useful in determining "wages" for the purposes of Title VII.) Consequently, this court will find that the traders' bonuses are part of their compensation for the purposes of Title VII.

6. This section provides in pertinent part that It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter....

(1) [s]he opposed an employment practice that was unlawful within the meaning of Title VII....; (2) [s]he suffered an adverse action by [her] employer; (3) because of [her] opposition to establish a prima facie case of retaliatory discharge. *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir.1985); *Jennings v. Tinley Park Community,* 796 F.2d 962, 966–67 (7th Cir. 1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987). Kleinwort moves for summary judgment on the grounds that Gallagher has not expressed opposition to any unlawful practice.

The opposed practice need not in fact violate Title VII as long as "the plaintiff has a reasonable belief that there is a Title VII violation." *Jennings,* 796 F.2d at 967. Moreover, while the "[c]ourts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition' ", the employer *must* be aware of the employee's opposition. *See Equal Employment Opportunity Commission v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1013 (9th Cir.1983); *see Jurado v. Eleven–Fifty Corp.,* 630 F.Supp. 569, 580 (C.D.Cal. 1985), *aff'd,* 813 F.2d 1406 (9th Cir.1987) (a defendant is "logically unable to retaliate against an opposition of which it was unaware and could not have known.")

Courts have found opposition where the plaintiff directly expressed concern about discrimination on some impermissible basis. *See, e.g., Reeder–Baker v. Lincoln National Corp.,* 649 F.Supp. 647, 657 (N.D.Ind. 1986), *aff'd,* 834 F.2d 1373 (7th Cir.1987) (the plaintiff asked the employer whether it "had a policy for blacks and a policy for whites"); *see also* Larson & Larson, *Employment Discrimination* § 87.12(a), at 17–77—17–93 (1987) (and cases cited within). Opposition can also be found where employees band together to challenge a practice that they believe discriminates against them on an impermissible basis. *See Jennings,* 796 F.2d at 963–64. In *Jennings,* for example, the plaintiff, a woman, joined together with other secretaries to protest an allegedly discriminatory overtime salary schedule. The employer grouped the secretaries, who were all women, into the same class of employees as custodians, who were all men. Notwithstanding this, the employer paid overtime to the custodians and did not pay it to the secretaries. *Id.* The plaintiff was fired for her part in the secretary group's opposition to the salary schedule. Thus, the plaintiff in *Jennings* opposed the employers practice of rewarding an all-male group of workers with a benefit that it denied a similarly categorized all-female group.

In this case, Gallagher contends that her opposition to an unlawful practice occurred during the three times that she met with Kleinwort's management regarding her salary. The discussions that occurred during these meetings are described above. *See supra,* at 1403–04. Gallagher never expressed a belief that she was being discriminated against on the basis of her sex. Nor did she comment on the lack of other female traders or on any of the other concerns about the treatment of women that she expressed in her response brief. Rather, her concern was that it was unfair for her to be the most profitable trader yet also the lowest paid one in terms of base salary. The question is whether the expression of the above concern shows that she opposed a practice reasonably believed to be unlawful under Title VII.

This court thinks not. Gallagher has not shown that she opposed the level of her salary because it was set on a discriminatory basis before her termination. *See Jurado,* 813 F.2d at 1411. She opposed the salary level because she felt that she should receive more money in consideration of her performance. The expression of a desire for personal advancement or for the enhancement of employment opportunities by a woman or member of a minority group does not invariably translate into a finding that that particular individual has opposed an employment practice believed to be unlawful under Title VII. *Id.* at 1411–12; *Cf. Gordon v. National Railroad Passenger Corp.,* 564 F.Supp. 199, 202–03 (E.D.Pa.1983) (a black plaintiff, whose primary purpose in complaining about an employment practice was to advocate for his own promotion, was nevertheless found to

have shown "opposition" for the purposes of Title VII because he had previously complained that the employment practice was racially discriminatory). The court also notes that the Ninth Circuit refused to find that a plaintiff had shown the requisite "opposition" in *Jurado*, a case with a seemingly more compelling factual scenario.

In *Jurado*, the plaintiff was a Hispanic disc jockey employed at a radio station. During the first several years of his employment, he broadcast in English only. At the request of management, Jurado later incorporated some "street" Spanish words into his program in an effort to attract Hispanic listeners. *Jurado*, 813 F.2d at 1408. Managment ordered Jurado to stop speaking Spanish after a consultant determined that the bilingual format was hurting the station's ratings. *Id.* Jurado refused to comply and he was terminated. Jurado brought numerous claims including one alleging that he was discharged in retaliation for opposing an English-only order that he believed to violate Title VII. The Ninth Circuit rejected Jurado's assertion that he had opposed an unlawful practice notwithstanding the fact that Jurado stated his opposition to the change in a manner that invoked the race of his supposed listeners.[7] The court found that "his statement merely expressed his fear for his personal 'success at KIIS' and his 'numbers,' not his concern about discrimination against him or other Hispanics." *Id.* at 1412. The court also found that there was no evidence that he "opposed the format change as discriminatory before he was fired." *Id.* at 1411. His deposition, EEOC filings, and application for unemployment insurance were also devoid of any evidence that he opposed the English-only rule for any reason other than his interest. *Jurado*, 630 F.Supp. at 579.

Similarly, the depositions of Gallagher and the others along with the remainder of the record, such as the notes that she took during her termination meeting, fail to supply evidence indicating that she opposed her salary level because it was set in a discriminatory manner. As with the plaintiff in *Jurado*, Gallagher opposed the setting of her base salary because it conflicted with her personal success and interests. This case stands in sharp contrast to the Tenth Circuit's decision in *Love v. RE/MAX of America, Inc.*, 738 F.2d 383 (10th Cir.1984). In *Love*, the female plaintiff, who was a vice-president, discovered that male vice-presidents had received larger starting salaries and were receiving more substantial raises than herself. The plaintiff orally requested a raise from the company president. This request was refused. The plaintiff then wrote a memo to the president requesting a raise *and* attached a copy of the Equal Pay Act. She was terminated two hours later. *Id.* at 384. The Tenth Circuit affirmed the district court's finding that the plaintiff had opposed an unlawful practice by sending a memo along with the attached copy of the Act. *Id.* at 387. By attaching the copy of the Act, the plaintiff in *Love* expressed her belief that the employer was discriminating on the basis of sex. There is no such evidence in this case. Consequently, Gallagher has failed to present sufficient evidence to allow a reasonable fact finder to find that she opposed a practice which she reasonably believed to be unlawful under Title VII. Accordingly, her retaliatory discharge claim is dismissed.

### Conclusion

For the foregoing reasons, the defendant's summary judgment motion is granted.

---

7. The text of Jurado's statement is as follows a lot of the numbers that I was getting on the air, a lot of these numbers were from Hispanic people, the presentation that I did at KIIS (the radio station), my success at KIIS and the numbers that I had, a lot of them was (sic) attributed to the Hispanics and that ethnic flavor.

This statement, which is susceptible to more than one interpretation, could be construed as expressing Jurado's concern that the format change was discriminating against the Hispanic listeners that he was purportedly attracting.

· ON MOTION TO VACATE

On September 30, 1988, the plaintiff filed a motion to vacate this court's judgment of September 27, 1988, which granted the defendant's motion for summary judgment on Counts I and II of the amended complaint. The court will treat the plaintiff's motion as one properly brought pursuant to Federal Rule of Civil Procedure 59(e). *See F/H Industries, Inc. v. National Union Fire Insurance Co.,* 116 F.R.D. 224, 226 (N.D. Ill.1987) (Aspen, J.) ("it is commonly recognized that a party seeking to have a judgment vacated may properly do so under Rule 59(e)"). The court will exercise its discretion to amend its Order of September 27, 1988 to read as follows:

> IT IS ORDERED AND ADJUDGED that summary judgment is entered in favor of defendant and against plaintiff on Counts I and II of the plaintiff's amended complaint.

*See Citibank, N.A. v. Bearcat Tire, A.G.,* 550 F.Supp. 148, 150 (N.D.Ill.1982) (Shadur, J.) (Rule 59(e) motions are addressed in the trial court's sound discretion).

■ The court must decide whether to retain its ancillary jurisdiction over the defendant's counterclaim. The court finds that the counterclaim concerns a question of state law and that a dismissal would not bar the reassertion of this claim in the state courts. In addition, the defendant represents that it will not pursue its counterclaim unless this court's judgment of September 27, 1988, is reversed and remanded on appeal. Defendant's Memorandum Regarding the Court's Jurisdiction Over Defendant's Counterclaim at 5. As a result, dismissal of the counterclaim will serve the interests of judicial economy. Consequently, the court will exercise its discretion to dismiss the defendant's counterclaim without prejudice. *United States v. Zima,* 766 F.2d 1153, 1157–59 (7th Cir. 1985); *American National Bank and Trust Co. v. Bailey,* 750 F.2d 577, 581 (7th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); *In re Cenco Inc. Securities Litigation,* 601

F.Supp. 336, 342–44 (N.D.Ill.1984) (Aspen, J.).