19 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Grady Michael STROMAN, Plaintiff-Appellant,
v.
WEST COAST GROCERY COMPANY, Defendant-Appellee.
 No. 92-36623.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 1, 1994.
Decided Feb. 23, 1994.
 
 Before: GOODWIN, SCHROEDER, AND NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 From 1981 to 1985, appellant Stroman worked for the West Coast Grocery Company ("WCG"). After voluntarily leaving WCG's employ in 1985, Stroman sued WCG for having refused to promote him to a supervisory position because of his race. Although Stroman prevailed on his racial discrimination claim in district court, he lost on appeal because of a settlement agreement he entered into when he left WCG. See Stroman v. West Coast Grocery Co., 884 F.2d 458, 461 (9th Cir.1989).
 
 
 3
 In 1991, Stroman applied to be rehired by WCG. He was not. He then filed this suit claiming that WCG refused to rehire him because of his race in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. Sec. 2000e et seq.), 42 U.S.C. Sec. 1981, and RCW 49.60.180. He also claimed that he was not rehired in retaliation for his prior discrimination suit against WCG, in violation of Title VII and RCW 49.60. Lastly, Stroman claimed that WCG breached the 1985 settlement agreement. The district court awarded summary judgment to WCG, and we affirm.
 
 
 4
 * Stroman contends that he was not rehired by WCG because he is black. To show that he suffered disparate treatment on the basis of race, Stroman must first make a prima facie showing of discrimination. Once he establishes such a case, the burden shifts to WCG to articulate legitimate, non-discriminatory reasons why it did not rehire Stroman. If WCG satisfies this burden, the burden shifts back to Stroman to prove that WCG's articulated reasons are mere pretext for discrimination. See Mitchell v. Office of Los Angeles County Schools, 805 F.2d 844, 846 (9th Cir.1986). While the burden of production shifts back and forth between the parties, the burden of persuasion always remains with Stroman.[1]
 
 
 5
 Assuming Stroman has made a prima facie case of discrimination, we conclude that WCG has articulated non-discriminatory reasons for not rehiring Stroman. WCG has offered evidence that the reason why it did not rehire Stroman in 1991 was because of Stroman's poor job performance when he had worked for WCG between 1981 to 1985.[2] WCG also offered undisputed evidence that in the five years between Stroman's leaving WCG and his application to be rehired, Stroman had an unattractive work record: he had held only two part-time, short term jobs. Given these legitimate reasons for WCG's employment decision, Stroman must demonstrate that there exist genuine issues of material fact surrounding the question whether WCG's articulated reasons are pretextual. Stroman offers three arguments.
 
 
 6
 First, Stroman contends that he was given inconsistent reasons for not being hired. But our review of the reasons shows that they all had in common WCG's belief that it could hire a superior worker based on Stroman's previous mediocre job performance.
 
 
 7
 Second, Stroman argues that the poor reviews in his employment file were caused by racial prejudice and points to the district court's ruling in his favor in Stroman I. But our court reversed that decision on appeal, and accordingly we give no credit to the district court's findings in Stroman I. In addition, those who had filed the allegedly prejudiced reviews of Stroman's work performance no longer worked for WCG when Stroman reapplied in 1991.
 
 
 8
 Third, Stroman argues that because of his previous experience with WCG, he was better qualified to be an "order selector" than the two white individuals who were hired without any experience. This argument fails to realize that in the eyes of an employer, "no experience" may be better than a history of mediocre performance.
 
 
 9
 "To withstand an employer's motion for summary judgment in a discrimination suit, the employee must do more than establish a prima facie case and deny the credibility of the employer's witnesses." Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1001 (9th Cir.1986). See also Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983) (requiring "specific, substantial evidence of pretext," and "substantial factual evidence"). Stroman has failed to offer the requisite "specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination." Schuler, 793 F.2d at 1011. Accordingly, we affirm the district court's award of summary judgment to WCG on the disparate treatment claim.[3]
 
 II
 
 10
 Stroman also claims that he was not hired in retaliation for his discrimination suit against WCG in Stroman I, in violation of Title VII and RCW 49.60. A retaliation claim is analyzed under the same burden shifting analysis as the disparate treatment claim resolved above. See Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir.1987) (Title VII); Kinney v. Bauch, 23 Wn.App. 88, 95 (Div. 1 1979) (RCW 49.60).
 
 
 11
 Assuming that Stroman has stated a prima facie case of retaliation, we conclude that WCG has offered legitimate non-retaliatory reasons for not hiring Stroman: as WCG explained on the disparate treatment claim, there were better qualified candidates.
 
 
 12
 The burden thus shifts back to Stroman, who must prove that there exists some genuine issue of material fact that WCG's proffered explanations are pretextual. WCG's decision was based on Stroman's work evaluations filed before he ever sued WCG in 1985. Accordingly, WCG's decision based on these evaluations cannot be retaliatory. See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir.1982). Since Stroman has failed to point to any specific or probative evidence to show that he was not rehired in 1991 because of the litigation back in 1986, we affirm the summary judgment to WCG on the retaliation claim.
 
 III
 
 13
 In 1985, when Stroman left WCG, he entered into a settlement contract with WCG, which provided in relevant part:
 
 
 14
 3. The employee's record will be cleared and information given out limited to date of hire, rate of pay, and journeyman status.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 6. These terms represent a full and final settlement of any and all claims arising out of [Stroman's] employment with West Coast Grocery.
 
 
 18
 Stroman contends that WCG violated the settlement agreement in two ways. First, he argues that WCG failed to erase its internal records of Stroman's job performance as required by the word "cleared" in paragraph 3 of the contract.
 
 
 19
 This is an unreasonable interpretation of the contract. The text and context of the contract show that it was intended to limit information "given out" to prospective third-party employers. It was not intended to obliterate WCG's institutional memory of the fact that Stroman had worked for WCG in the past and that in WCG's eyes, his performance lacked luster. Indeed, Stroman's own argument that he should have been hired because he had more experience than other applicants assumes that WCG was not required to destroy its internal records of Stroman's past employment.
 
 
 20
 Second, Stroman claims that WCG breached the settlement contract when its lawyer made certain critical statements about Stroman to the press after the trial in Stroman I.[4] The settlement contract, however, was intended to govern direct communications between WCG and prospective employers of Stroman, not general statements to the press that merely repeated what had already been stated publicly at trial.
 
 
 21
 Moreover, it is undisputed that WCG did not authorize these statements, and in fact, immediately instructed its attorney not to make any further comments. Since Stroman has failed to show that the attorney, who was outside counsel, was acting as an agent, and not as an independent contractor, Stroman's breach of contract claim fails. Cf. State v. Antoine, 82 Wn.2d 440, 444 (1973) ("A contract ... can be enforced only against those party to it.").
 
 IV
 
 22
 Stroman's various other claims are unpersuasive. His contention that the district court should not have granted summary judgment while he was attempting to discover statistical data to support a disparate impact theory is meritless. This argument is new on appeal, and Stroman never moved to compel production of such information in the court below.
 
 
 23
 Stroman's argument based on the tort of intentional infliction of emotional distress is also meritless since he has failed to show any objective evidence of emotional distress "so severe that no reasonable [person] could be expected to endure it." Restatement (Second) of Torts Sec. 46 (1965), comment j.
 
 
 24
 Finally, Stroman's argument based on the violation of Executive Order 11246 is meritless because there is no private right of action under this executive order. See Utley v. Varian Associates, Inc., 811 F.2d 1279, 1286 (9th Cir.), cert. denied, 484 U.S. 914 (1987).
 
 CONCLUSION
 
 25
 The district court's award of summary judgment to WCG is AFFIRMED.[5]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Whether understood as a claim arising under Title VII, 42 U.S.C. Sec. 1981, or RCW 49.60, we analyze Stroman's claim under the same approach. See Jurado v. Eleven-Fifty Corp., 813 F.2d 1406 (9th Cir.1987) (proof on Sec. 1981 claim same as that required in Title VII); Farnam v. Crista Ministries, 116 Wn.2d 659, 676 (1991) (standards for 49.60 claim similar to Title VII standards)
 
 
 [2]
 See, e.g., Declaration of Willie Mosley at 2-3 ("I evaluated [Stroman's] performance as poor and indicated that we should not rehire him.... My opinion of Stroman's performance was not in any way based on Stroman's race. I am an African-American. One of Stroman's immediate supervisors, Charles Young, was also an African-American.") (noting over 40 critical evaluations)
 
 
 [3]
 Stroman cites Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir.1985), amended, 784 F.2d 1407 (9th Cir.1986), for the proposition that summary judgment is almost always inappropriate when a civil rights plaintiff has stated a prima facie case. But as this court later clarified, "Lowe was amended to indicate that the court did not mean to prevent the summary disposition of meritless suits but simply ensure that when a material fact exists a civil rights litigant will not be denied a trial on the merits." FDIC v. Henderson, 940 F.2d 465, 473 at n. 16 (9th Cir.1991) (internal quotations omitted). Stroman has brought a meritless suit
 
 
 [4]
 The attorney's comments included: "He wasn't a very good worker." "Mike Stroman was notorious for turning disagreement into confrontation." See E.R.Tab 97, at 3
 
 
 [5]
 Although we reject Stroman's arguments, his appeal is not frivolous. Accordingly, we award no attorney's fees to WCG under Fed.R.App.P. 38