60 F.3d 836
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Michael WILTON, Plaintiff-Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant-Appellee,
 No. 94-15116.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided July 7, 1995.
 
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Wilton, a gardener with the San Francisco Department of Recreation and Parks, appeals the district court's grant of summary judgment to the City and County of San Francisco ("City") in Wilton's race discrimination and retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17, and the California Fair Employment and Housing Act, Cal.Gov't Code Secs. 12900 et seq. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Following a series of employment decisions that Wilton believed were motivated by race and retaliatory motives, Wilton, who is black, filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation. The EEOC first referred the matter to the California Department of Fair Employment and Housing, which issued a right-to-sue letter on April 19, 1990. The EEOC also declined to pursue the charges, and issued a right-to-sue letter on August 2, 1991. On November 4, 1991, Wilton filed the instant action in district court.
 
 
 4
 The City initially moved to dismiss the action on grounds that it was untimely filed. The district court denied the motion, concluding that the City had not demonstrated that Wilton had received the EEOC right-to-sue letter more than 90 days before filing his complaint. The City then moved for summary judgment, which the district court granted.
 
 II
 
 5
 We review de novo a grant of summary judgment by the district court. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 III
 
 6
 The City argued in the district court that Wilton's Title VII action was untimely because he filed it more than 90 days after the EEOC issued a right-to-sue letter.[1] Although the City does not argue this issue in its brief on appeal, if the time limit is jurisdictional, we must consider it. However, we have held that the 90-day limit is not jurisdictional; thus, it is subject to waiver. Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1172-74 (9th Cir.1986), amended, 815 F.2d 570 (1987); 42 U.S.C. Sec. 2000e-5(f)(1). Given the City's failure to argue the expiration of the 90-day period on appeal, we deem it waived. In any event, although the right-to-sue letter was sent out more than 90 days before filing, there is no evidence that Wilton received the letter at that time. Absent that, dismissal on this ground would not be appropriate. Missirlian v. Huntington Memorial Hosp., 662 F.2d 546, 549 (9th Cir.1981) ("ninety-day time limit on Title VII civil suits does not commence until the plaintiff receives notice of his or her right to sue...."), cert denied, 456 U.S. 906 (1982).
 
 IV
 
 7
 Wilton contends that the City discriminated against him in various conditions of employment based on a disparate treatment theory of race discrimination and a theory of retaliation for exercising rights protected by Title VII. Wilton raised four separate incidents of discriminatory treatment: (1) Wilton's supervisor, David Mitchell, placed a written reprimand in his personnel file for excessive talking on the job while meting out less severe discipline to white employees; (2) Wilton was reassigned to the Plaza beat, a position he did not like; (3) Wilton was denied an opportunity to bid for the Huntington Square position; and (4) Wilton was subject to verbal abuse at the hands of second line manager Jon Huttinger. The City argues that some or all of these incidents do not amount to the establishment of a prima facie case, and that even if they do, the City provided legitimate nondiscriminatory explanations that no reasonable jury could find were pretextual.
 
 
 8
 Section 703(a)(1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. Sec. 2000e-2(a)(1).[2] To prevail, Wilton must ultimately prove that the City intended to discriminate against him. Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1409 (9th Cir.1987).
 
 
 9
 The allocation of the burden of producing evidence in a Title VII disparate treatment case is well-established. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The employee first must establish a prima facie case of racial discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746-47 (1993). The employer is then obligated to articulate a legitimate, nondiscriminatory reason for the action taken against the employee. Id. at 2747. Finally, the employee must demonstrate through "specific, substantial" evidence that the employer's proffered reason was pretextual, and that the real reason for the employer's decision was intentional discrimination based on race. Id. at 2747-48; Steckl v. Motorola, Inc., 703 F.2d 392, 293 (9th Cir.1983).
 
 
 10
 An employee's failure to allege "specific facts" that establish a prima facie case should result in summary judgment. Jurado, 813 F.2d at 1409. Even if an employee establishes a prima facie case, an employer's legitimate nondiscriminatory reasons may still lead to summary judgment as long as the evidence presented by the employee is insufficient to permit a rational trier of fact to find that the employer intentionally discriminated against the employee because of his or her race. Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir.1994). In other words, the employee must offer a genuine issue of material fact with regard to pretext to survive summary judgment. Id. at 890.
 
 
 11
 In a race discrimination claim, an employee must, for a prima facie case, establish that: (1) he or she was a member of a particular race; (2) he or she applied for a position for which the employer was seeking applications; (3) he or she was rejected; and (4) the employer continued to seek applications for the position. Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1994). This test is flexible and can be adapted to other employment contexts, such as discrimination in the terms and conditions of employment. Id. The elements of a retaliation claim include: (1) the employee engaged in protected Title VII activity; (2) the employee was subjected to an adverse employment decision; and (3) there is a causal link established between the protected activity and the employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir.1987), cert. denied, 498 U.S. 939 (1990).
 
 
 12
 * Wilton argues that the written reprimand was discriminatory because other nonminority gardeners were treated differently. We disagree. Wilton has not established specific facts necessary for a prima facie case of discrimination. Simply put, he does not establish that race played any factor in the issuance of the reprimand. The City presented evidence that three gardeners had been issued reprimands in the year prior to Wilton's reprimand; one was white, one was black, and one was Hispanic. Even if Wilton did present a prima facie case, the City's asserted reason for the reprimand was legitimate and nondiscriminatory; indeed, Wilton does not contest the fact that he engaged in excessive talking on the job. Wilton has not presented specific, substantial evidence that the City's reason was pretextual.
 
 B
 
 13
 Wilton next contends that his transfer to the Plaza "beat" on July 25, 1989 was based on racial discrimination.[3] Again, Wilton provides no evidence to connect race to this decision. Wilton makes no claim that gardeners of other races were treated differently than he, or that he was transferred because of his race. Even if we assumed that Wilton established a prima facie case, the City presented evidence that the gardening needs in the Plaza were high because a major pruning project was underway. Wilton has not demonstrated any specific facts indicating that this explanation was pretextual.
 
 
 14
 Wilton also contends that the transfer to the Plaza was retaliation for his reprimand the previous day. Even if it was, that is not a Title VII violation because the activity of talking on the job is not a protected Title VII activity. In any case, Wilton admitted in his own deposition that the reshuffling of beats began one week before the reprimand. Summary judgment was appropriately granted on this claim.
 
 C
 
 15
 Wilton next argues that the City's failure to consider him for the Huntington Square assignment constituted race discrimination and possible retaliation for his filing an internal complaint with the City. We disagree.
 
 
 16
 One critical element of the prima facie case for race discrimination is that the employee apply for a position that is available or open for bid. Similarly, in a retaliation claim the employee must be subject to an adverse employment decision. Wilton did not, and could not, establish this specific fact. The City presented the Declaration of Ron De Leon, the Superintendent of Parks, who indicated that "the assignment never came open for bids" because the temporary gardener's "performance at Huntington Square was excellent, as evidenced by the attached letters of commendation." Wilton's own supervisor, Mitchell, indicated in a letter that when Wilton asked him about the Huntington Square position, Mitchell told him that it was not available. Wilton never applied for the position, so he could not have been rejected for racial or retaliatory motives. As with the other claims, Wilton presents no evidence indicating that the City's decision to keep the current gardener and not open the job for bidding was pretextual. Thus, summary judgment was proper on both race discrimination and retaliation claims.
 
 D
 
 17
 Finally, Wilton argues that he was subjected to verbal abuse based on his race.[4] This contention is properly divided into two different arguments. First, Wilton argues that the verbal abuse amounted to creation of a hostile work environment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986). Second, the verbal abuse, specifically the one racial comment, could support Wilton's other claims of racial discrimination because, according to Wilton, Huttinger's comment was made in early 1989, before all of the alleged incidents of racial discrimination occurred.
 
 
 18
 We reject both theories. Although Huttinger's comments were crass (he was subsequently disciplined by De Leon for his comments), they were isolated, and are insufficient to establish a hostile work environment. The one racial comment, Huttinger's use of the word "brother" at some time over a year before the altercation, is not enough to create sufficient specific evidence to survive summary judgment. Stray remarks are insufficient to establish discrimination. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990). No evidence was presented linking Huttinger's remark to any employment decisions made regarding Wilton. Although the record reveals that Huttinger was evidently not fond of Wilton, no other racial remarks or prejudicial remarks were indicated. The City provided legitimate, nondiscriminatory and undisputed reasons for all its employment decisions, and one comment by one manager is not enough to demonstrate specific and substantial evidence of pretext. Steckl, 703 F.2d at 393.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The City also argued that Wilton's state law action was untimely because he filed it more than one year after the issuance of a right-to-sue letter. This issue was not raised on appeal, and it is not jurisdictional. Thus, we consider it waived
 
 
 [2]
 Because California's Fair Employment and Housing Act is "based on Title VII," Pallas v. Pacific Bell, 940 F.2d 1324, 1327 (9th Cir.1991), we will address only the Title VII claim. Our decision resolving Wilton's Title VII claim also resolves his state law claim. Id
 
 
 [3]
 Although Wilton also argued to the district court that his later transfer to the position of "floating" gardener in March of 1990 was racially motivated, he does not maintain that claim on appeal. In any case, Wilton's supervisor Mitchell believed that Wilton was better off with more supervision. There is no evidence that this decision was racially motivated. Furthermore, the position of "floating" gardener was not a demotion in terms of pay or benefits
 
 
 [4]
 Specifically, Huttinger told Wilton that he would no longer be able to complain because "[y]ou're going to have a brother down there." The racial remark apparently referred to Mitchell, who was black, taking over as Wilton's supervisor. When Wilton reminded Huttinger of this remark at a later time, an altercation ensued, and Huttinger swore at Wilton